**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEMINI CONSULTING GROUP INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06 C 3032 |
| HORAN KEOGAN RYAN LTD., an Irish limited liability company, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Before the court are defendant's motion to dismiss the complaint and defendant's motion to confirm certain arbitral awards. For the reasons explained below, the motion to dismiss is granted and the motion to confirm the arbitral awards is granted in part and denied in part.

**BACKGROUND**

Plaintiff, Gemini Consulting Group Inc. ("Gemini"), is an Illinois corporation involved in the development of medical care facilities both in the United States and overseas. Defendant, Horan Keogan Ryan Ltd. ("HKR"), is an Irish architectural firm. This action arises out of the development of two medical care facilities in Ireland.

The first project was the development of a medical facility in Trim, County Meath, Ireland (the "Trim Project").  On July 30, 2003, Gemini and HKR executed a signed agreement (the "Trim Agreement") pursuant to which HKR would provide architectural services.   The Trim Agreement contained a dispute-resolution provision that stated as follows:

> 7.   We agree that if any dispute or difference shall arise between the parties in connection with this Agreement or arising thereunder, that any such dispute or difference shall be and is hereby referred to arbitration and the final decision of such person as the parties hereto may agree to appoint as arbitrator, or failing agreement as may be appointed at the request of either party by the President of the [Royal Institute of Architects of Ireland], shall be binding.  Any such reference to arbitration shall be deemed to be a submission to arbitration in accordance with the Arbitration Acts, 1954-1998, or any Act amending or replacing same.  The award of the arbitrator shall be final and binding on the parties.
>
> 8.   The governing law relating to any matter arising under this Letter of Appointment or in connection therewith shall be the laws in Ireland.

(Compl., Ex. A, Trim Agreement, at 10.)

Gemini complains that with respect to the Trim Agreement, HKR failed to create original designs but rather took the drawings of existing medical facilities that Gemini had provided to HKR as examples, made several flawed modifications, and submitted the plans to Gemini as HKR's own.

Gemini also became involved in the development of a similar medical facility in Sligo, Ireland (the "Sligo Project").  Gemini

alleges that without request by Gemini, HKR created preliminary plans and designs for the Sligo Project and submitted them to Gemini. According to Gemini, although the parties discussed the Sligo Project, they never reached any agreement, written or oral, and never signed a contract relating to that project.

Gemini contends that despite HKR's failure to fulfill its duties under the Trim Agreement and despite the absence of any contractual agreement concerning the Sligo Project, HKR submitted charges to Gemini of € 112,313.53 for the Trim Project and € 10,461.47 for the Sligo Project.[1] Gemini objected to the charges and attempted to negotiate with HKR, but efforts to resolve the dispute failed, and in May 2004, HKR advised Gemini that it would initiate arbitration.

On June 24, 2004, HKR's counsel contacted Gemini about initiating arbitration. HKR suggested three candidates for arbitrator and stated that if Gemini did not respond within twenty-one days, HKR would apply to the Royal Institute of Architects of Ireland ("RIAI") for the appointment of an arbitrator. Gemini had not yet retained a lawyer in Ireland.

Gemini did not substantively respond to HKR's letter or agree on an arbitrator. On August 23, 2004, HKR sent a letter to the

---

[1] Attached to HKR's memorandum in support of its motion for confirmation of the arbitral awards as Ex. 4 is a May 18, 2004 letter from HKR's counsel to Gemini that reflected outstanding charges of € 109,915.53 for the Trim Project and € 10,461.73 for the Sligo Project. At that time, those amounts were equivalent to about $130,000 and $12,500, respectively.

RIAI requesting that an arbitrator be appointed. Gemini alleges that HKR committed "procedural errors" in initiating the arbitration by referring to Gemini in correspondence as "Gemini Consulting Inc." instead of "Gemini Consulting Group, Inc." and by requesting a single arbitrator for both the Trim and Sligo disputes.

The RIAI appointed an arbitrator named David Keane. In late September 2004, Keane accepted the appointment and undertook to arbitrate both disputes. Gemini objected to Keane's appointment and refused to sign the appointment form. Keane indicated that under Irish law, he had the power to arbitrate the disputes even if Gemini did not consent to his appointment.

On February 28, 2005, after some delay occasioned by Gemini, Keane notified the parties that an initial meeting would take place in Dublin, Ireland on April 4, 2005. In mid-March 2005, Gemini's president, James McCarthy, advised Keane that McCarthy would "attempt to attend [the] meeting via conference phone call" but that the meeting "may have to be postponed" because of McCarthy's travel schedule. (HKR's Mem. in Supp. of Mot. to Confirm Awards, Ex. 19.) Gemini still did not have Irish counsel at that point. Keane would not postpone the meeting and would not allow participation by telephone.

Counsel for HKR attended the April 4 meeting, but Gemini did not send a legal representative. After the meeting, Keane sent a

letter to the parties that summarized the meeting and gave further

directions.   The letter stated in pertinent part:

> A preliminary meeting in connection with this reference
> to arbitration was held . . . at 4.30 pm on Monday, 4th
> April. . . .
>
> The claimant, Horan Keoghan [sic] Ryan, was
> represented . . . . Gemini Consulting, the respondent,
> had previously notified me of their inability to attend
> or to be represented and I informed them that involvement
> in the meeting by way of a conference telephone call
> would not be appropriate.
>
> I was advised that there were two references, one in
> connection with a project in Trim, Co. Meath and the
> other in Sligo but that I should deal with the disputes
> as a single reference.
>
> The arbitration will be held under the provisions of
> the Arbitration Acts 1954-1998 and in particular under
> the UNCITRAL Model Law on International Commercial
> Arbitration . . . .

(HKR's Mem. in Supp. of Mot. to Confirm Awards, Ex. 21, Letter of

April 6, 2005 ("April 6 Letter").)   Keane also gave the parties

deadlines for filing "Points of Claim" and "Points of Defence."

HKR submitted its brief, but Gemini missed the deadline for

filing its brief.   Shortly thereafter, Gemini hired Irish legal

counsel, who advised Keane and HKR that Gemini wanted to raise an

unspecified jurisdictional issue before filing its response brief.

Keane responded, stating that he had the power to rule on his own

jurisdiction and directing Gemini to file a brief with respect to

jurisdiction by June 24, 2005.   Gemini indicated that it needed

time to obtain certain information about Keane's appointment from

HKR, obtained the information, and then sent a letter to Keane on

July 5 stating its position that Keane's appointment was

"defective" because Keane was presiding over both the Trim and the Sligo disputes without Gemini's consent. (HKR's Mem. in Supp. of Mot. to Confirm Awards, Ex. 30.)

Keane directed that a "procedural meeting" be held and proposed several dates. Gemini refused to participate on the ground that it did not want to waive its argument that Keane's appointment was invalid. (HKR's Mem. in Supp. of Mot. to Confirm Awards, Ex. 32.) Gemini alleges that it "attempted to rectify the appointment issue so that arbitration on the Trim Project might proceed properly under the Trim Project's arbitration clause." (Compl. ¶ 32.) A "procedural meeting" was held at Keane's direction on August 31, 2005; HKR was present but Gemini was not. In a September 1, 2005 letter to the parties, Keane stated: "In previous correspondence [Gemini] stated they would refuse to attend any meeting that dealt with matters other than the validity of my appointment. I am satisfied that my appointment is valid and I now propose, without any further notice, to proceed to the making and publishing of the awards." (HKR's Mem. in Supp. of Mot. to Confirm Awards, Ex. 35.)

On November 22, 2005, Keane issued two awards. With respect to the Trim Project, Keane awarded HKR € 109,513.53 in professional fees and € 2,800.00 in fire engineering consultancy costs (the "Trim Award"). With respect to the Sligo Project, Keane found that HKR and Gemini had entered into a contract and accordingly awarded

HKR € 10,461.73 in professional fees (the "Sligo Award"). Interest on those amounts at a rate of 4% was also awarded as well as costs. In both awards, Keane noted that Gemini "refused to acknowledge the validity of my appointment and refused to comply with my directions with regard to meetings and pleadings." (Compl. Ex. D.)

On May 26, 2006, HKR notified Gemini that HKR intended to institute proceedings before the High Court in Ireland to enforce the awards. Gemini filed the instant action on June 2, 2006. Gemini seeks three types of declaratory relief in its complaint: (1) a declaration that the arbitration awards are invalid and unenforceable; (2) a declaration that HKR has repudiated the Trim Agreement and therefore waived its right to arbitration; and (3) a declaration that HKR must initiate any legal proceedings against Gemini here in the United States.

HKR now moves to dismiss the complaint and to confirm the arbitral awards.

## DISCUSSION

### A. Motion to Dismiss

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in

the plaintiff's favor.  <u>Hentosh v. Herman M. Finch Univ. of Health
Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999).  Dismissal is
appropriate only if "'it is clear that no relief could be granted
under any set of facts that could be proved consistent with the
allegations.'"  <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir.
1997).

In its first claim, Gemini seeks a declaration that the
arbitration awards are invalid and unenforceable.  HKR contends
that we must dismiss this claim because the United Nations
Convention on the Recognition and Enforcement of Foreign Arbitral
Awards (the "Convention")[2] does not permit us to grant such relief.

The parties agree that the Convention governs this case.
District courts of the United States have original jurisdiction
over actions or proceedings arising under the Convention.[3]  <u>See</u> 9
U.S.C. § 203.  The Convention "mandates very different regimes for
the review of arbitral awards (1) in the [countries] in which, or

---

[2]/  United Nations Convention on the Recognition and Enforcement of Foreign
Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, <u>reprinted in</u> 9
U.S.C. § 201 note.  Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201,
provides that the Convention shall be enforced in United States courts.  Both
Ireland and the United States are signatories to the Convention.
   The Convention "is the supreme law of the land . . . and controls any case
in any American court falling within its sphere of application.  Thus, any
dispute involving international commercial arbitration which meets the
Convention's jurisdictional requirements . . . must be resolved with reference
to that instrument."  <u>Filanto, S.p.A. v. Chilewich Int'l Corp.</u>, 789 F. Supp.
1229, 1236 (S.D.N.Y. 1992) (emphasis removed).

[3]/  "[A]ny commercial arbitral agreement, unless it is between two United
States citizens, involves property located in the United States, and has no
reasonable relationship with one or more foreign states, falls under the
Convention."  <u>Jain v. de Méré</u>, 51 F.3d 686, 689 (7th Cir. 1995) (citing 9 U.S.C.
§ 202).

under the law of which, the award was made, and (2) in other [countries] where recognition and enforcement are sought." <u>Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 23 (2d Cir. 1997). Under the Convention, the country in which (or under the arbitration law of which) an award was made is said to have primary jurisdiction over the arbitration award. All other signatory countries have secondary jurisdiction. <u>See</u> <u>Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara</u>, 335 F.3d 357, 364 (5th Cir. 2003). Courts in countries of primary jurisdiction have broad authority to review arbitral awards, including the power to set aside an award, whereas courts in countries of secondary jurisdiction are limited to either enforcing or refusing to enforce a foreign arbitral award. <u>See</u> <u>id.</u> at 367-69; <u>see also</u> <u>Yusuf Ahmed Alghanim</u>, 126 F.3d at 23.[4] (A refusal to enforce an award must be based on one of several limited grounds for refusal, which are discussed more extensively <u>infra</u> in regard to HKR's motion to confirm the awards.)

The awards here were made in Ireland, not the United States, so we are a court of secondary jurisdiction, and our authority is restricted to either enforcing or refusing to enforce the awards. Gemini does not seriously dispute this principle, but argues that

---

[4] This limitation on the authority of courts of secondary jurisdiction is derived from Articles V(1)(e) and VI of the Convention, which refer to an award being set aside or suspended by a "competent authority of the country in which, or under the law of which, that award was made."

it is merely "contesting the enforcement" of the awards. This explanation rings hollow. Of course Gemini contests enforcement, but it goes a large step further. Its position is proactive, not reactive; after all, Gemini is the plaintiff, and the complaint specifically seeks a form of relief--"a declaration that the Awards issued by the arbitrator are invalid and not enforceable against Gemini." (Compl. ¶ 42.) The Convention does not empower us to enter such an order, which would be akin to setting aside or vacating the awards. Because Gemini fails to state a claim on which we can grant relief, its first claim must be dismissed.

In its second claim, Gemini seeks a declaration that HKR has waived its right to arbitration by repudiating the Trim Agreement. Gemini complains that the actions taken by HKR in seeking the appointment of an arbitrator and by "allow[ing] Keane to act as arbitrator over two improperly consolidated arbitration proceedings" violated the Trim Agreement. (Compl. ¶ 45.) The principle that our authority is limited to enforcing or refusing to enforce the award seems to apply to this claim as well. But more significantly, the Seventh Circuit has held that where adjudication of a claim necessitates relitigation of an issue decided in a foreign arbitration proceeding, and where the party seeking relitigation of the issue had an opportunity to raise it in the arbitration, the district court lacks subject-matter jurisdiction over the claim. See Slaney v. International Amateur Athletic

Found., 244 F.3d 580, 590-92, 601 (7th Cir. 2001) (explaining that relitigation would undermine or nullify an arbitrator's decision in contravention of the Convention). Here, Gemini not only had the *opportunity* to raise its objections to Keane's appointment and to the structure of the proceedings, it *did* raise those objections, see HKR's Mem. in Supp. of Mot. to Confirm Awards, Exs. 30 & 32. Keane determined that his appointment over both disputes was valid. Gemini's second claim for relief will be dismissed because we lack subject-matter jurisdiction.

In Gemini's third claim for relief, it seeks a declaration that "any legal proceedings HKR may initiate against it must be taken in Gemini's home jurisdiction." (Compl. ¶ 51.) In its response brief, Gemini confuses matters by recharacterizing the type of declaration it is seeking: "Gemini is not seeking to designate only U.S. courts as the proper forum, but is requesting that this Court determine whether HKR has, in fact, repudiated the parties' contractual agreement. Gemini is certainly not requesting an anti-suit injunction, but is seeking a declaration of its legal rights and responsibilities so it can proceed in its daily business activities with assurance of no undue interference." (Gemini's Resp. to Mot. to Dismiss at 11-12.) If Gemini is truly seeking a determination regarding whether HKR "repudiated" the Trim Agreement, then Gemini's third claim is duplicative of its second claim, which is addressed supra. If Gemini is seeking a ruling

regarding where HKR could bring a hypothetical enforcement suit, then it is asking us for an advisory ruling, which we are not empowered to render. There is no enforcement action currently taking place or currently threatened (in fact, HKR has moved in *this* proceeding for confirmation of the arbitral awards, see <u>infra</u>). Federal judicial power extends only to cases and controversies; we may not give opinions on moot questions or abstract propositions. <u>See</u> <u>Worldwide St. Preachers' Fellowship v. Peterson</u>, 388 F.3d 555, 558 (7th Cir. 2004). As with the first and second claims, we do not have jurisdiction to award the kind of relief sought in Gemini's third claim. Accordingly, the complaint will be dismissed.

**B.** **Motion to Confirm the Arbitral Awards**

Along with its motion to dismiss the complaint, HKR filed a motion to confirm the arbitral awards. As explained <u>supra</u>, our role in reviewing the awards is strictly limited. "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified" in the Convention. 9 U.S.C. § 207; <u>Yusuf Ahmed Alghanim</u>, 126 F.3d at 19. The "award must be enforced unless the party against whom enforcement is sought presents evidence that one of the limited defenses enumerated under Article V of the Convention is applicable." <u>Slaney</u>, 244 F.3d at 588.

The seven grounds for refusal to confirm an award are as follows: (1) a party to the arbitration agreement lacked capacity or the agreement is otherwise invalid under applicable law; (2) the party against whom the award is invoked was not given proper notice of the arbitrator's appointment or was otherwise unable to present its case; (3) the award concerns a matter that did not fall within the scope of the arbitration agreement; (4) the composition of the arbitral authority or the arbitral procedures were not in accordance with the arbitration agreement or with the law of the country where the arbitration took place; (5) the award is not yet final or has been set aside by a competent authority of the country in which or under the law of which the award was made; (6) the subject matter of the dispute is not capable of settlement by arbitration under the law of the country where confirmation of the award is sought; and (7) confirmation of the award would violate the public policy of the country where confirmation of the award is sought.  <u>See</u> Convention, art. V.

Furthermore, Article IV of the Convention provides:

[T]o obtain . . . recognition and enforcement [of arbitral awards], the party applying for recognition and enforcement shall, at the time of the application, supply: (a) The duly authenticated original award or a duly certified copy thereof; (b) The original agreement referred to article II or a duly certified copy thereof.

Article II, in turn, provides:

Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to

arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

Gemini's first argument against confirmation of the awards is that HKR fails to satisfy Article IV in three respects: it has not provided "duly certified" copies of the awards, the Trim Agreement, or any agreement regarding the Sligo Project.

As for the awards and the Trim Agreement, Gemini does not truly dispute their existence; its objection is merely procedural. Moreover, HKR has submitted copies of the awards and the Agreement along with the Declaration of Jonathan Cullen, a solicitor from the firm that represented HKR in the arbitration.  Mr. Cullen states that he has personal knowledge that the documents attached to HKR's motion to confirm the awards, including the awards and the Agreement, are genuine, and in our view, this is sufficient to satisfy the requirements of the Convention.  See Overseas Cosmos, Inc. v. NR Vessel Corp., No. 97 CIV. 5898(DC), 1997 WL 757041, at *5 (S.D.N.Y. Dec. 8, 1997).

The Sligo Project is another matter, however.  As set forth supra, Article IV requires a party seeking enforcement of an award to submit "[t]he original agreement referred to in article II." Article II provides that agreements in writing shall be recognized

and defines an "agreement in writing" to "include an arbitral clause in a contract or an arbitration agreement, *signed by the parties* or contained in an exchange of letters or telegrams" (emphasis added). HKR has submitted what it deems the Sligo Agreement, but that document is unsigned, and HKR has failed to provide an exchange of letters or telegrams.

HKR maintains that the Convention does not require a signed agreement, citing three cases that are distinguishable because there was other evidence demonstrating an agreement to arbitrate. Here, we have only an unsigned agreement. HKR asserts that even if the Convention requires a signed agreement to arbitrate, we can confirm the Sligo Award under § 9 of the Federal Arbitration Act, 9 U.S.C. § 9 (the "FAA"). We disagree. As stated <u>supra</u> note 2, the Convention is incorporated into the FAA and "controls any case in any American court falling within its sphere of application." <u>Filanto, S.p.A.</u>, 789 F. Supp. at 1236. To the extent that other provisions of the FAA conflict with the Convention, the Convention controls. See <u>McDermott Int'l, Inc. v. Lloyds Underwriters of London</u>, 120 F.3d 583, 588-89 (5th Cir. 1997). If, as HKR maintains, the FAA does not require a signed agreement as a prerequisite to enforcement, that would conflict with the express terms of the Convention, and the Convention would control. Because HKR is relying on an unsigned contract and has failed alternatively to provide an exchange of letters or telegrams, it cannot obtain

recognition of the Sligo Award under the plain language of the Convention. See Dynamo v. Ovechkin, 412 F. Supp. 2d 24, 27-29 (D.D.C. 2006) (dismissing petition to confirm arbitral award where there was no signed agreement to arbitrate and no exchange of letters).

We are left with the Trim Award and the remainder of Gemini's objections to confirmation. For the most part, Gemini hangs its hat on Article V's fourth ground for refusing to confirm an award: "The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." Convention, art. V(1)(d).

Gemini asserts that there are four reasons why this ground applies. The first is that the appointment of David Keane was "improper" because Gemini did not agree to or "authorize" his appointment. This argument ignores the express terms of the Trim Agreement, which provided that "*failing agreement* [an arbitrator] may be appointed at the request of either party by the President of the RIAI." (Compl., Ex. A, Trim Agreement, at 10.) The parties failed to agree, so HKR requested that an arbitrator be appointed, and Keane was appointed by the President of the RIAI. This appointment procedure was in accord with the terms of the Trim Agreement.

Gemini's second argument is that Keane "consolidated" the Trim and Sligo disputes in violation of Irish law, which provides that an arbitral tribunal has no power to order consolidation of proceedings unless the parties agree to confer such power on the tribunal. (Gemini's Resp. to Mot. to Confirm, Ex. A, Irish Arbitration Act of 1998, ¶ 9.) Gemini relies on Keane's statement in the April 6 Letter that he was advised by HKR that "there were two references, one in connection with a project in Trim, Co. Meath and the other in Sligo but that I should deal with the disputes as a single reference." (HKR's Mem. in Supp. of Mot. to Confirm Awards, Ex. 21.) Gemini mischaracterizes this statement as an "express acknowledg[ment]" by Keane that the disputes were consolidated. It is simply a statement regarding what Keane was told by HKR. HKR points out that in its written submissions to Keane, it argued that there were two contracts and by necessity two separate arbitrations and that Keane rendered two separate awards. Gemini has failed to come forth with any evidence demonstrating that Keane did consolidate the disputes, such as evidence relating to how evidence and/or testimony was taken and considered during the arbitration proceedings. Because Gemini has not presented sufficient evidence that the proceedings were consolidated, this argument is rejected.

Gemini's next contention is that the award fails to satisfy the requirement of the Model Law on International Commercial

Arbitration[5] (which the Irish Arbitration Act adopts) that an award "state the reasons upon which it is based." (Gemini's Resp. to Mot. to Confirm, Ex. A, Irish Arbitration Act of 1998, Schedule, art. 31). Gemini's objection does not fit within the terms of Article V(1)(d), which allows for non-recognition only if there is a deficiency in the arbitral composition or procedure. Article V(1)(d) does not encompass objections to the form of an award. In any event, the Trim Award does state the reasons upon which it is based: there was a valid contract between the parties containing an agreement to arbitrate; Gemini refused to acknowledge the validity of Keane's appointment and refused to comply with Keane's directions with regard to meetings and pleadings; Keane was satisfied that his appointment was proper; and having considered HKR's submissions, Keane found that Gemini owed HKR monies for professional fees and fire engineering consultancy costs.[6]

Gemini's last argument with respect to Article V(1)(d) is that "HKR repudiated the Trim Agreement, making any award regarding that Agreement unenforceable." (Gemini's Resp. to Mot. to Confirm at 11.) This is another argument that does not involve the composition of the arbitral authority or the arbitral procedure. Moreover, we have rejected Gemini's contention that the manner in

---

[5] The Model Law was established by the United Nations Commission on International Trade Law.

[6] The award was akin to a default judgment where a court takes the plaintiff's submissions as true and deems them admitted in the absence of any evidence from defendant.

which HKR sought appointment of the arbitrator procedure violated the terms of the Trim Agreement, see supra.

In its final argument against confirmation of the Trim Award, Gemini invokes Article V(1)(b) of the Convention, which applies where "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case."[7] Gemini maintains that it was "precluded at every turn from presenting its case." (Gemini's Resp. to Mot. to Confirm at 11.) The evidence belies this contention. It is abundantly clear that Gemini received actual notice of Keane's appointment as well as all arbitration proceedings and schedules. The exhibits to HKR's motion demonstrate that Gemini unreasonably delayed the commencement of the arbitration proceedings. Gemini excuse's is that it did not obtain Irish counsel for many months, but the decision to hire Irish counsel was entirely within its own control. Furthermore, the exhibits demonstrate that Gemini was not prevented from presenting its case; rather, Gemini chose to present argument that went solely to Keane's appointment. When it failed to persuade Keane that his appointment was improper, Gemini *chose* not to present any additional argument on the merits of the issues

---

[7] Gemini also briefly invokes Article V(2)(b), which provides that enforcement of an award may be refused if it would violate public policy of the country in which enforcement is sought, but that theory is rejected for the same reason the Article V(1)(b) theory is rejected: Gemini was able to present its case; it simply chose not to participate in the arbitration proceedings.

being arbitrated, but it certainly was not *unable* to present its case.

Because Gemini has failed to persuade us that any of the Convention's defenses to enforcement of the Trim Award are applicable, the Trim Award will be confirmed.

## **CONCLUSION**

Defendant's motion to dismiss the complaint is granted. Defendant's motion to confirm the international arbitral awards is denied as to the Sligo Award and is granted as to the Trim Award.


DATE:       May 30, 2007


ENTER:   _____

John P. Grady, United States District Judge